(No. 6950.   January 31, 1942)

E. V. CLEEK, Appellant, v. VIRGINIA GOLD MINING AND MILLING COMPANY, a corporation, Respondent.

(122 Pac. (2d) 232)

Rehearing denied March 2, 1942

Clarence T. Ward, for Appellant.

Z. Reed Millar, for Respondent.

MORGAN, J.—This action was commenced July 22, 1940, by appellant, against Virginia Gold Mining and Milling Company, a corporation organized and existing under and by virtue of the laws of Idaho, hereinafter called the company, to recover for breach of contract. C. E. Norton was also made a defendant. He was not served with summons, and, on oral argument in this court, it was agreed by counsel for the parties litigant that he is not a party to this appeal and that his name should be stricken from the title of the case. October 11, 1940, the company filed a demurrer to the complaint, at the bottom of which appeared:

"Residence:                          C. E. NORTON
707 Utah Sav. & Trust Bldg.   Attorney for the Defendant
Salt Lake City, Utah              VIRGINIA GOLD MINING and
                                           MILLING COMPANY
                                           Residence: Salmon, Idaho.
                                                 LOT L. FELTHAM
                                                    of Counsel
                                                    Salmon, Ida."

On the last mentioned date, the company filed a document entitled "Demand for change of place of trial from Ada County to Lemhi County," wherein it was alleged its principal place of business was in Lemhi County. The name of Mr. Norton appears on the demand as attorney for the company. The name of Mr. Feltham does not appear on it.

November 20, 1940, counsel for appellant filed a motion to strike the demurrer and the demand for change of place of trial from the files, and that default of the defendant be entered. The motion was based on the ground that the demurrer and demand were null and void because neither of them had been signed or filed by an attorney licensed to practice law in Idaho. The motion was supported by affidavits showing that C. E. Norton, whose name was signed to the demurrer and demand for change of place of trial, was a resident of Utah and had not been admitted to the bar in Idaho.

Honorable Chas. F. Koelsch, the judge before whom the case was pending, wrote a letter to Mr. Norton, of which the following is a copy:

"November 25, 1940

"C. E. Norton, Esq.
Attorney at Law
707 Utah Savings & Trust Bldg.
Salt Lake City, Utah

"Dear Sir:

"On last Saturday the attorney for the plaintiff in the case of E. V. Cleek vs. Virginia Gold Mining and Milling Company called up his Motion to have your demurrer and your demand for change of place of trial, stricken from the files upon the ground that you are not a resident attorney and do not have associated with you in the said case a resident attorney, as required by our statute, Section 5-701, I. C. A.

"I notice that your demurrer was signed by yourself and Lot L. Feltham, Salmon, Idaho, but Mr. Feltham has

since died. This notice is, therefore to apprise you of the foregoing matters so that you can take such action as you wish.

Respectfully yours,

CHAS. F. KOELSCH,

"C.F.K.:J.                                        District Judge

"P.S. The motion referred to again automatically comes up for hearing on next Saturday, November 30th. K."

The company wrote to the clerk of the court, apparently in response to that letter, as follows:

"Salt Lake City, Utah.
November 28, 1940

"Otto F. Peterson
Clerk of the District Court,
Boise, Idaho

in re: E. V. CLEEK Vs. Virginia GM&M Co.

"Dear Sir:

"We have just been informed that our resident attorney, Mr. L. Feltham, of Salmon, Idaho, has died. We do not have any details and we do not know where he left our papers in this case.

"We are sending a man to Salmon for the papers in this case which were in his possession and there make arrangements to have another resident attorney enter his appearance in this case.

"It was planned to move to consolidate this case with another case at Salmon between the Virginia GM&M Co. and the 'L. S. Campbell' mentioned in paragraphs III and VII of the complaint herein; and all of our data was in the immediate possession of said Lot L. Feltham.

"Or, he planned to move the court for an order making said L. S. Campbell and L. J. Peterson and M. C. Levinson, parties to this action in order to secure a complete determination of the controversy shown by the record herein. And such motion will be made on a mining partner-

ship contract dated August 16, 1939 (which has not been pled by plaintiff but is in the possessions of said deceased attorney.)

"THEREFORE, we request about ten days time in which to secure said records and another attorney to duly present this case in court.

Respectfully,
VIRGINIA GOLD MINING
AND MILLING CO.

(Seal) <span style="float:right">By Chas. E. Norton."</span>

No appearance having been made on behalf of the company by an Idaho attorney, Judge Koelsch, December 14, 1940, made and entered an order sustaining the motion to strike the demurrer and demand for change of place of trial from the files, and directing that the default of the company be entered, which was done on that date. In the order the judge stated that it appeared to the court that summons had been served on the company and that it had appeared and filed a demurrer and demand for change of place of trial; that neither the demurrer nor demand was signed by an attorney admitted to practice law in Idaho; that the demurrer had endorsed thereon the name of Lot L. Feltham; that it was written by C. E. Norton on the original demurrer, but did not appear on the copy thereof which was served on appellant.

December 28, 1940, no further appearance having been made by or on behalf of the company, and appellant having introduced evidence in support of the causes of action set out in his complaint, judgment in his favor and against the company was entered. March 21, 1941, the company served and filed notice of motion to vacate and set aside the default and judgment. The motion, which was filed March 28, 1941, contains the following statement of grounds on which it was made:

"Said motion is based upon the affidavits and answers filed herein and on the file and papers on file in said case, and for the failure and neglect of said defendant's attorney, Charles E. Norton, to file and serve a paper associating a resident attorney of Idaho within the time

limited therefor, and for the inadvertence and excusable neglect of the said legal representative for not so associating a resident attorney in said case on behalf of said defendant."

In support of the motion, the company filed the affidavit of C. E. Norton, wherein he stated:

"I, C. E. NORTON, being first duly sworn depose and say: That I am Secretary and Treasurer and Managing Director of the Virginia Gold Mining and Milling Company, and that as such I prepared and caused to be filed a demurrer to the complaint in this action. That on August 31, 1940, I employed Lot L. Feltham, Esq., an attorney residing in Idaho to represent said defendant in this action and in another action at Salmon, Idaho, and then paid him $50.00 attorney's fees for such services. That said Lot L. Feltham accepted said retainer and then and there become attorney for said Virginia Gold Mining and Milling Company, and so acted up to the time of his death in November, 1940, and during that time this defendant relied on him. That upon learning of his death I so advised the Clerk of this Court and made an effort to recover the papers and exhibits in this case, and while so engaged, on December 7th, 1940, I was stricken with a heart disease and was forced to bed with such sickness. That on December 10th, 1940, I caused H. Mark Earl, Esq., to be retained as attorney for said Company in place of said Lot L. Feltham, and he so appeared at Blackfoot, Idaho, on December 11th, 1940. But because of said sickness I failed to have him file his appearance in this case. * * * "

■ Section 5-701 requires:

"All pleadings filed in the district courts or Supreme Court of this state shall be signed by a resident attorney of the State of Idaho, who shall state his residence or post-office address; and the name of a resident attorney shall be indorsed on all summons issued out of the district courts, and all pleadings required to be verified shall be verified by a party to the action, or any attorney residing in the State of Idaho and regularly admitted to practice in the courts of this state."

In *Mason v. Pelkes,* 57 Ida. 10, 31, 59 Pac. (2d) 1087, 1097, we said:

"We invite attention to the fact that the statutes of Idaho and our rules do not contemplate the admission of nonresidents of this state to the bar. (I. C. A., secs. 3-101, 3-104; rule 2 of the Rules of the Supreme Court of Idaho; rule 2 [now 102] of the Rules of the Supreme Court and Board of Commissioners of the Idaho State Bar.) The privilege of appearing as counsel in our courts is granted to nonresident attorneys, not as a right, but as a courtesy, * * * "

See, also, *Anderson v. Coolin,* 27 Ida. 334, 149 Pac. 286; *Roberts v. Wehe,* 53 Ida. 783, 27 Pac. (2d) 964.

In *Kynaston v. Thorpe,* 29 Ida. 302, 305, 158 Pac. 790, are to be found two rules which are applicable to this case, as follows:

"It has been frequently decided by this court, and may be said to be a settled rule, that granting or refusing to grant a motion to vacate a judgment and set aside a default which have been permitted to be taken and entered through mistake, inadvertence, surprise or excusable neglect is a matter which rests largely within the sound judicial discretion of the trial judge, and that his action in so doing will not be reversed except in cases wherein that discretion has been abused. In cases of this kind, however, this rule is to be applied together with the one announced in case of *Hall v. Whittier,* 20 Ida. 120, 116 Pac. 1031, wherein it was said 'The application was heard on affidavits and files in the case, and we have all the showing before this court that was before the trial judge who granted the motion, and we are therefore in as favorable a position for considering the matter as was the trial judge. (*Parsons v. Wrble,* 19 Ida. 619, 115 Pac. 8; *Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752.)' "

In *Ticknor v. McGinnis,* 33 Ida. 308, 311, 193 Pac. 850, 851, we said:

"While the granting or refusing to grant a motion to vacate a judgment and set aside a default, where right to relief is based on the claim that they have been per-

mitted to be taken and entered through mistake, inadvertence, surprise or excusable neglect, is a matter which rests largely in the discretion of the trial judge, reference is always had in stating that rule to a sound, judicial, reviewable discretion, in the exercise of which courts must bear in mind a judgment is property of which the owner must not be deprived without due process of law, and the mistake or neglect, to be sufficient, must be such as may be expected on the part of a reasonably prudent person situated as was the party against whom the judgment was entered. (*Kynaston v. Thorpe,* 29 Ida. 302, 158 Pac. 790; *Valley State Bank v. Post Falls etc. Co.,* 29 Ida. 587, 161 Pac. 242; *Green v. Craney,* 32 Ida. 338, 182 Pac. 852."

See, also, *Domer v. Stone,* 27 Ida. 279, 149 Pac. 505; *Nelson v. McGoldrick Lumber Co.,* 30 Ida. 451, 165 Pac. 1125; *Savage v. Stokes,* 54 Ida. 109, 28 Pac. (2d) 900; *Voellmeck v. Northwestern M. L. Ins. Co.,* 60 Ida. 412, 92 Pac. (2d) 1076.

After a hearing, the judge made an order sustaining the motion to vacate and set aside the default and judgment. This appeal is from that order.

The motion is based on two grounds: 1. "the failure and neglect of said defendant's attorney, Charles E. Norton, to file and serve a paper associating a resident attorney of Idaho within the time limited therefor," and, 2. "the inadvertence and excusable neglect of the said legal representative for not so associating a resident Idaho attorney in said case on behalf of said defendant."

With the rules above quoted in mind, we will examine the showing made by the company in support of its motion. It consists of the affidavit of Mr. Norton, heretofore quoted from, and an affidavit corroborating his statement as to the occurrence of his illness. Counter affidavits were filed by appellant.

Mr. Norton, in his affidavit, states he prepared and caused a demurrer to the complaint to be filed, as secretary and treasurer and managing director of the company. He does not say in his affidavit he was attorney for the company, or had been instructed by it to employ one to represent it in this case. He says in his affidavit he em-

ployed Feltham, an attorney residing in Idaho, to represent the company in this and another action, pending at Salmon, and paid him for such services, and that Feltham became attorney for the company and acted as such to the time of his death, but he does not say Feltham signed the demurrer to the complaint, in conformity to the law requiring that it be signed by an Idaho attorney, or otherwise, nor does he deny that he wrote Feltham's name thereon, as found by the court. His affidavit shows he knew of the death of Feltham before the entry of default; that on December 7, 1940, he was stricken with a heart disease and was forced to bed with such attack; that on December 10, 1940, he caused an Idaho lawyer to be retained as attorney for the company in place of Mr. Feltham, in a case, other than this, pending in this state. Affiant does not explain what caused him to employ an Idaho attorney to represent the company in lieu of Mr. Feltham, deceased, in the case pending at Salmon, and prevented him from employing the same, or another Idaho attorney, in this case. The company, in the letter written to the clerk of the court, November 28, 1940, and signed by Mr. Norton, said:

"We are sending a man to Salmon for the papers in this case which were in his [Feltham's] possession and there make arrangements to have another resident attorney enter his appearance in this case."

Mr. Norton does not explain in his affidavit, or elsewhere, why the man sent to arrange for an Idaho attorney to appear in this case did not do so. He was secretary, treasurer and managing director of the company, and, while the record does not show his failure to employ an Idaho attorney to represent it in this case, after Mr. Feltham's death, was due to his mistake, inadvertence, surprise or excusable neglect, if it did so show, there has been no effort to explain why some other officer of the corporation did not attend to the matter.

The record does not disclose facts which will justify the conclusion that failure to have a pleading or other appearance on behalf of the company, signed, served and filed by an attorney at law, qualified and licensed to act as such, prior to default, was due to anything other

than inexcusable negligence of the officers of the company, respondent herein.

The company relies on the following provision in § 5-905:

"Whenever any judgment, order or proceeding is taken against a party otherwise without default, through the neglect or failure of any attorney of such party to file or serve any paper within the time limited therefor, the court, or the judge thereof, in vacation, shall, upon application * * * set aside such judgment, order or proceeding and may, in its discretion, require the attorney guilty of such failure or neglect to pay the costs or expenses actually and necessarily occasioned to the opposite party by such failure or neglect, and may, in its discretion, also impose upon such attorney a penalty of not exceeding $100.00."

That section is not available to the company. In providing for relieving a party litigant from the consequences of the "neglect or failure of any attorney of such party to file or serve any paper within the time limited therefor," reference is made to an attorney licensed to practice law in Idaho. The statute cannot be construed to mean a foreign attorney, who is forbidden by law to practice in this state. It is confined to attorneys who have the right, and owe the duty, to represent the litigant in the courts of Idaho. Mr. Norton is not such an attorney.

Another reason that statute is not available to the company is that it was not "a party otherwise without default." It had actual knowledge of the death of Mr. Feltham, in ample time before its default was entered, to procure counsel to represent it and its failure to do so was due to the gross negligence of its officers.

The company relies on § 3-206, which is:

"When one party's attorney dies, is removed, suspended, or ceases to act as such, the adverse party must, before any further proceedings can be had by written notice, require such party to appoint another attorney or to appear in person."

The company's letter, dated November 28, 1940, heretofore quoted, shows its officers had knowledge of the

death of Mr. Feltham in ample time, prior to default, to have procured an Idaho attorney to represent it. Under such circumstances, § 3-206 does not apply (*Smith-Nieland v. Reed,* 39 Ida. 788, 231 Pac. 102).

The order appealed from is reversed. Costs are awarded to appellant.

Givens, C.J., and Holden, J., concur.

Ailshie, J., dissents.

Budge, J., sat at the hearing, but did not participate in the decision.